Andrews *v.* The Marine National Bank of Erie, Appellant.

Argued April 12, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Enoch C. Filer,* with him *S. Y. Rossiter,* for appellant.

*A. Grant Walker,* with him *Gunnison, Fish, Gifford & Chapin,* for appellee.

OPINION BY STADTFELD, J., July 16, 1943:

Prior to July 11, 1939, the Marine National Bank of Erie had been duly constituted a bondholders' agent or committee for all of the owners of bonds of the New Consumers Bread Company, a corporation, said bonds

having been issued under a mortgage covering the property of that corporation. The personnel of the bondholders on July 11, 1939, and for some period prior thereto, and the amount of the face value of bonds held by each one was as follows: The Marine National Bank of Erie, a banking corporation, $40,000; the Secretary of Banking of the Commonwealth of Pennsylvania, Receiver of the Erie Trust Company, a defunct bank, $24,500; the First National Bank of Erie, a banking corporation, $8,000; Charles Hagenlocher, an individual, $2,500; making a total of $75,000 face value of bonds outstanding.

During the months of July and August 1939, the plaintiff purchased from all of the above named bondholders their holdings of bonds, so that on August 21, 1939, the final date of delivery of the bonds held by the Marine National Bank of Erie, the plaintiff became owner of all outstanding bonds secured by the mortgage covering the real estate of the New Consumers Bread Company.

The Marine National Bank of Erie as agent for the bondholders of the New Consumers Bread Company on August 21, 1939, had a fund in its hands which had been collected by it and by the former agent for the bondholders from rents and other income arising from the property covered by the mortgage, from which fund it had from time to time paid taxes and expenses of itself as agent for the bondholders, as shown by plaintiff's Exhibit K. The balance in this fund was $1100.71. On December 9, 1939, the Marine National Bank of Erie "agent for bondholders of the New Consumers Bread Company," without authority of Anna C. Andrews, plaintiff, distributed pro rata this fund of $1100.71 to the four above named former holders of bonds under the claim that the fund belonged to them as individuals and did not pass with the sale of the bonds by them to the plaintiff. During the negotiation and at the time of the purchase of the bonds by plain-

tiff, she had no knowledge that there were any undistributed funds in the account of the Marine National Bank of Erie, Trust Department, agent for the bondholders.

Suit was instituted by the plaintiff against the Marine National Bank of Erie as agent for the recovery of the fund distributed by the agent without her authority, and upon a trial of the case in the court below, judgment for the plaintiff was directed in an opinion by WADE, P. J., from which judgment this appeal has been taken.

This judgment must be affirmed.

As early as *Foster v. Fox,* 4 Watts & Sergeant 92, it was stated by Mr. Chief Justice GIBSON: "But the principle of equity that the purchaser of a debt is a purchaser of all the creditor's securities for it, is settled by many decisions ...... By purchasing the debt, he purchased, even without a special stipulation for it, the means to enforce it."

This case was approved in *Beaver Trust Co. v. Morgan et al.,* 259 Pa. 567, 103 A. 367, in an opinion by Mr. Justice STEWART, wherein he states on page 570: "A purchase of a debt is a purchase of all the securities for it, whether named or not at the time of the assignment, unless expressly agreed at the time they shall not pass."

In *Betz v. Heebner,* 1 Penrose & Watts, 280, it was held that an assignee of bonds which were secured by a mortgage, is entitled to all the security which the mortgage affords, although he did not know of its existence when he took an assignment of the bonds.

Whether the assignment is of a mortgage or the bonds secured by the mortgage makes no difference. The mortgage was to secure the entire issue of bonds. A change in the personnel of the bondholders does not affect the assets or security behind the bonds. If the personnel of the bondholders changes from time to time, by operation of law the agent for the bondholders be-

comes the agent for the new bondholder no matter who he or 'she might be, and would be answerable to that bondholder so long as he or she remained such.

The persons who were formerly bondholders disposed of their holdings to the plaintiff without reservation of any kind, and the plaintiff stepped into their shoes while a fund of $1100.71 remained in the hands of the agent for the bondholders. The agent for the bondholders several months thereafter, without authority of the plaintiff, distributed this fund to persons who were not at the time of distribution the owners of any bonds. One of these bondholders, viz., Charles Hagenlocher, realizing* that he had disposed of all of his bonds, after seeking the advice of counsel, refused to accept his distributive share on the ground that he had no right to participate in the distribution of this fund.

The fund in dispute consists, as shown by the statement of the defendant plaintiff's Exhibit K, headed "First and Final Statement of Account of the Trust Department of the Marine National Bank of Erie, Agent for the Bondholders of the New Consumers Bread Company," of the sum of $1100.71, composed of "Balance received from A. W. Mitchell former agent ...... $569.63; Rent to May, 1938 ...... $210; Rent to December 31, 1938 ...... $320; and interest on $12,500 @ 5% from Jan. 1, 1939 to June 1, 1939 ...... $260.42, making a total of $1360.05. Deducting 1939 City Taxes, $199.82, counsel fees, $20, commission of the Marine National Bank of Erie, Trust Dept., $39.52, total deductions of $259.34, leaves a net balance of $1100.71."

Attached to this statement is a schedule of distribution pro rata, prepared by the defendant, to the four former holders of the bonds acquired by the plaintiff.

This statement shows conclusively the construction by the defendant as to the character and purpose of the

fund in question, as being a security for the payment of the bondholders.

By reference to the very able and comprehensive opinion of the court below, we find an unanswerable statement as to the character of the fund in controversy. We quote therefrom: "The facts are admitted. On January 22, 1926, the New Consumers Bread Company gave a mortgage to a trustee in the usual manner so that ownership of the negotiable bonds could be diversified. The bonds were held by the defendant, the Marine National Bank of Erie, and the Erie Trust Company, the First National Bank of Erie, and Charles Hagenlocher. The bonds became in default, and Attorney A. W. Mitchell became agent for the protection of the bondholders. After A. W. Mitchell had collected rent and acted for the bondholders, on December 13, 1938, a meeting was held, as a result of which the Marine National Bank of Erie succeeded to the position held by A. W. Mitchell.

"A transcript was made at the time of the meeting in the form of a letter to the Marine National Bank of Erie, the defendant, dated December 13, 1938, Plaintiff's Exhibit I. The report reads in part: 'Inasmuch as this Bank is the largest holder of bonds, it was moved by Mr. Hagenlocher, seconded by Mr. Greist of Erie Trust Co., that the account be turned over to the Trust Department of the Marine National Bank for future handling. Mr. Johnson (President of the defendant Bank) was present in person at the meeting.' The report further reads: 'It was unanimously agreed that diligent effort should be made to collect the arrears of rent, and Mr. Johnson was to get in touch with the tenant.' Mr. Mitchell said also in the letter: 'I have been collecting these rents as mortgagee technically in possession.' Mr. Johnson, who was in complete charge for the defendant, said on page twenty-eight (28) of the testimony: 'We had the same agreement that the agent,

Mr. Mitchell, had, and that was all turned over to us.' This agreement, as can be seen from the report, was not that of merely passively receiving the rents, but contemplated active service on the part of the defendant in protecting the bondholders.

"Under these circumstances, Anna C. Andrews, plaintiff, made a written contract, which was completed on August 21, 1939 with the Marine National Bank of Erie, defendant, for the purchase of the bonds, held by the defendant for itself and as agent, by means of correspondence, which is admitted. It is not necessary to set forth all the provisions of the contract, but the point in controversy is the fact that the bonds or the written contract concerning the bonds did not specify that a rent fund, held by the defendant obviously as security for the debt, should pass with the bonds. There is documentary evidence which is admitted that this rent fund was held by the defendant and was distributed to itself and the other bondholders to the exclusion of this plaintiff-assignee. There is absolutely no evidence in this record to be found in the written contract or in documentary evidence or otherwise, that this defendant expressly excepted the transfer of this security from the sale of the debt to the plaintiff.

"...... This fund was additional security for the debt and had been appropriated as such. The obvious purpose of the appointment of the defendant as agent of the bondholders was for the protection of a defaulted debt. This defendant was the largest holder of the bonds and was naturally interested in minimizing the loss so far as possible. In fact it was appointed as agent to secure all that was available for the protection of the bonds. The minutes of the appointment, Plaintiff's Exhibit I, shows there was contemplated an active service. The fact that the fund was deposited with the defendant, with the consent of the owner of the building and the tenant, Defendant's Exhibit 2, which is a letter from the 'New Consumers Bread Company, A. W.

Andrews' (A. W. Andrews was also owner of the building), and with the consent of the bondholders, was an appropriation of the fund as security as much so as if it had been assigned. 'An assignment of the debt is an assignment of all the securities for it, and any order, writing, or act, which amounts to an appropriation of a fund, is an assignment of the fund.' *Philips v. Bank of Lewistown,* 18 Pa. 394, at 403 (1852).

".......On August 21, 1939, the defendant must have taken the position that the fund was collateral to the negotiable bonds, because it then appropriated this same fund in question to its own use and the use of the other bondholders.

"The defendant was correct in treating the fund as collateral to the negotiable bonds, but it did err in not recognizing the fact that the bonds and the incidental fund, not having been expressly excepted by contract passed by operation of law to the assignee of the debt.

".......The entire record showed the background of this fund to be one of security, and the status of this defendant as the largest owner of the defaulted debt and agent for the other owners. There can be no question upon an unbiased inquiry that the money was deposited with the defendant as an additional protection for this defaulted debt. In addition to the admitted facts, we have the unequivocal act of this same defendant, placing its own construction of the status of the fund as security, when it appropriated its share of this same fund to its own use as a part owner of the defaulted debt. Such an appropriation would have been proper construction of the fund as a security for the debt, had not the debt, and, under the law, the security for the debt, been sold to the plaintiff as an incident of the bonds."

The principle discussed in the cases supra is correctly set forth in 19 Corpus Juris Secundum, Section 1192 at page 857 as follows: ".......,an assignment of

the bonds, whenever made, carries with it all of the security provided for by the mortgage and all the right, interests, and remedies of the mortgagee."

In the case of *Steiner v. Girard Trust Co.*, 12 D. & C. 761, referred to in the opinion of the court below, is a very able opinion by Judge LEWIS where a thorough review of the law is made.

The cases relied on by appellant are readily distinguishable from the instant case.

We believe that the court below arrived at a correct conclusion.

Judgment affirmed.