419 A.2d 785

**U. S. STEEL HOMES CREDIT CORPORATION, Appellant,**

**v.**

**SOUTH SHORE DEVELOPMENT CORPORATION, Mortgagor and A & R Realty, Ann Kaye and Robert D. Kaye, trading as A & R Realty, John M. McLaughlin, Mary L. McLaughlin, Daniel N. Baker, Florence S. Baker, William Simitoski Terre–Tenants.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed May 16, 1980.

Paul F. Curry, Erie, for appellant.

Will J. Schaaf, Erie, for appellees.

Before PRICE, CAVANAUGH and WATKINS, JJ.

CAVANAUGH, Judge:

In June, 1968, the South Shore Development Corporation executed a mortgage, as mortgagor. The mortgagee was U. S. Steel Homes Credit Corporation, the appellant in this case. The mortgage was duly recorded in Erie County, Pennsylvania and was secured by three lots in a development known as the South Shores Estates. When the mortgage was signed, the mortgagee required personal guarantees by officials of the South Shore Development Corporation, namely, Michael Harris, Sheila Harris, George Y. Harris (now deceased), and Sylvia Harris. The individual guarantors signed a document separate from the mortgage.

In time, the mortgage was released by appellant as to two of the lots but remains in effect as to Lot No. 2, of the South Shore Estates Plan, the lot involved in this litigation.

On or about October 16, 1975, Lot No. 2 was conveyed to William Simitoski, the appellee in this case. Unfortunately, Mr. Simitoski was unaware of the existence of the mortgage on the lot which he purchased although a title search was made for him. The attorney making the title search overlooked the recorded mortgage and with this oversight, appellee's legal difficulties commenced. Shortly after Mr. Simitoski took possession of his real estate, a complaint in mortgage foreclosure was filed against him and others by the appellant. The amount owed on the mortgage at the time of the filing of the complaint was alleged to be approximately $34,500.00. It was also alleged that Simitoski had acquired the property (Lot No. 2) by deed from Ann Kaye and Robert D. Kaye, trading as A & R Realty. Mr. Simitoski was the only one to file an answer to the complaint.

A hearing was held in the mortgage foreclosure proceeding before McClelland, J., without a jury. At the hearing,

Mr. Simitoski's counsel tendered checks totalling $36,600.82 to the appellant which amount covered in full the principal, interest and costs owed to appellant on the mortgage. The checks were payable to the order of U. S. Steel Homes Credit Corporation and its attorney. Appellant was willing to assign the mortgage and bond and warrant to Mr. Simitoski and satisfy the mortgage but was unwilling to assign or transfer the document by which the Harrises assumed personal liability for payment of the mortgage.

On September 28, 1978, the court below entered the following order:

(1) William Simitoski is the owner and occupant of premises known as Lot No. 2, South Shore Estates, Plan No. 1, Erie County Map Book No. 7, Pg. 63, known as 4250 East Lake Road, Erie, Pennsylvania.

(2) A mortgage recorded in Erie County, Pennsylvania, Mortgage Book 838, Pg. 324, is outstanding in favor of U. S. Steel Homes Credit Corporation against the above mentioned premises.

(3) Counsel for William Simitoski is prepared to pay in full the debt, interest and costs of said mortgage.

(4) Upon tender of the above mentioned payment, U. S. Steel Homes Credit Corporation shall either assign the mortgage to William Simitoski or satisfy the mortgage and, in either event, assign any supporting documents accompanying the mortgage to William Simitoski.

The issue before us on appeal is very narrow: Does the appellee, Mr. Simitoski, as subrogee, have the right to have the mortgage on his property assigned to him together with all rights and remedies which the original mortgagee (appellant) had against the individual guarantors of the mortgage? The court below found that appellee as the party paying the obligation of another had this right, and we agree.

Appellant does not deny that appellee, as subrogee, has the right to have the mortgage assigned to him or satisfied upon payment of the principal indebtedness on the mortgage, plus interests and costs, which amount was ten-

dered to appellant at the mortgage foreclosure proceedings. However, appellant wants to retain its rights to proceed against the Harrises on their guarantee as individuals. It was testified to at the hearing by an assistant treasurer of appellant that the appellant was currently suing the guarantors in Florida.[1]

■ Mr. Simitoski has paid (or has tendered payment) the debt of another, the South Shore Development Corporation, in order to clear title to his land. Since he was in possession of the land subject to an existing lien of a mortgage, he was a terre–tenant. *See Dengler v. Kiehner*, 13 Pa. 37 (1849). He was, of course, not a volunteer in offering to pay off the mortgage as he may lose his land if the mortgage is not satisfied.

Appellant has rights under the mortgage against South Shore Development Corporation which is primarily liable on the mortgage and also against the Harrises as guarantors of the mortgage.

■ Undoubtedly, appellant was not satisfied with South Shore's ability or willingness to pay the mortgage and so demanded security in addition to South Shore's obligation. However, it is of no legal significance why a personal guarantee was given; the fact is that it was given as additional security for payment of the mortgage.

Appellant attempted to collect on the mortgage from South Shore Development Corporation beginning in 1970 but without success. When asked if he was aware that South Shore was financially insolvent, appellant's assistant treasurer testified, "I presume so. I don't know that." In any event, if appellee is permitted only to pursue South Shore and not the guarantors of the mortgage, his hope of recovering some or all of the money that he must pay to the appellant will be limited.

1. Appellant's suit against the Harrises in Florida to recover money is based upon personal guaranties signed by the Harrises, including the guaranty at issue in the present appeal. (Appellant's brief, page 8.) Once Mr. Simitoski pays off the mortgage, appellant should have no further right against the Harrises on their individual guaranty to pay the mortgage.

■ Appellant agrees that Mr. Simitoski has the rights of a subrogee and that he "is entitled to all the remedies which the creditor [appellant] possesses against the debtor [South Shore Development Corporation] and that U. S. Steel is prepared to assign without recourse all of its remedies against the debtor, South Shore Development Corp. to Simitoski." (Appellant's brief, page 6.) "Subrogation is founded on principles of equity and benevolence and may be decreed where no contract or privity of any kind exists between the parties. Wherever, one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor." *Cottrell's Appeal*, 23 Pa. 294 (1894). Appellant contends that this case supports its argument that appellee's remedy is limited to an assignment of the mortgage only since this was extent of its remedy against South Shore. We find this argument too narrow an interpretation of the law. In *American Surety Company of New York v. Bethlehem National Bank of Bethlehem, Pa.*, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. 241 (1941), the Commonwealth of Pennsylvania had $135,000.00 on deposit in the Bethlehem National Bank which went into receivership. The receiver paid the Commonwealth $66,-500.00 and the balance of $68,500.00 was paid by the surety. The receiver then declared additional dividends in the amounts of 20%, 10% and 5%, respectively. The United States Supreme Court held that the surety could share in these dividends based on the bank's original deposit of $135,000.00 and not only on the $68,500.00 which the surety in fact paid. The Rule of Subrogation provides that "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other. . . . *Succeeding to the creditor's right, the surety also succeeds to the creditor's means for enforcing it.*" 314 U.S. at 317, 62 S.Ct. at 228. (Emphasis added.)

The Superior Court of Pennsylvania stated in *International Harvester Company v. Tuscarora Township (1)* that subrogation is ". . . 'a legal fiction by force of which an obligation extinguished by payment made by a third party is

considered as continuing to subsist for the benefit of this third person, *who makes but one and the same person with the creditor in view of the law.'* . . . It may arise where payment has been made under a legitimate and fair effort to protect ascertained interests of the party paying and when intervening rights are not legally jeopardized or defeated . . ." 43 Pa.Super. 410, 415 (1910). (Emphasis added.)[2]

The general rule is well settled that if a subrogee has paid a debt, he is entitled to all the securities that the creditor had against the principal debtor. *Sundheim v. Philadelphia School District,* 311 Pa. 90, 101, 166 A. 365 (1933). Appellant's obligation owed to it by South Shore Development Corporation was secured by the mortgage on the land which included Mr. Simitoski's land and also by a personal guarantee given by the Harrises. If this obligation is paid by Mr. Simitoski, there is no reason in law that he should not have the same security that appellant had, namely, the mortgage signed by South Shore Development Corporation and the guarantee signed by the Harrises individually. Under the law of assignments, the assignee stands in the same shoes as the assignor. An assignment does not confer on the assignee any greater rights than those possessed by the assignor. *Pennsylvania Higher Education Assistance Agency v. Devore,* 267 Pa.Super. 78, 406 A.2d 343, 344 (1979). However, the assignee's rights are not inferior to those of the assignor.

Finally, appellant relies on *Knouf's Appeal,* 91 Pa. 78 (1879) in support of his argument that appellee is entitled to assignment only of the mortgage and bond and warrant. In *Knouf's Appeal,* three individuals were owners as tenants in

---

**2.** Black's Law Dictionary, Fourth Edition defines subrogation as: "A legal fiction through which a person who, not as a volunteer or in his own wrong, and in absence of outstanding and superior equities, pays debt of another, is substituted to all rights and remedies of the other, and the debt is treated in equity as still existing for his benefit, and the doctrine is broad enough to include every instance in which one party pays the debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by such other."

common of a lot on which they erected a planing–mill and commenced business under the firm name of Knouf & Co. Prior to construction of the building, several judgments were entered as liens against the land. As a result of work and materials furnished to the firm of Knouf & Co. in connection with the construction of the mill, mechanics' liens were entered, all of which were subsequent to the judgment liens. The firm failed and it executed a deed of assignment of the firm property for the benefit of creditors. The assignee of the firm sold the mill property discharged of all liens under the Act of January 19, 1876 and filed his account of the proceeds. The auditor awarded the whole fund to the judgments which were prior liens to the mechanics' claims and the lower court entered an order of subrogation in favor of the holders of the mechanics' liens. The Supreme Court reversed on the grounds that the mechanics' liens holders were not entitled to subrogation and stated at Page 82:

> It needs but the above statement of facts, to show that the difficulties in the way of the mechanics' lien–creditors, are very serious, leaving out of view any question of the right of subrogation growing out of the peculiar nature of their liens. The claims filed were against the firm, and were for partnership debts. The firm does not, and so far as this record shows, did not own any real estate. The mill lot was owned by the three partners, not as a firm, but as tenants in common. The judgments which were paid out of the fund, and to which the appellees were subrogated, were not against the firm, but against John Knouf and Peter Heilman, two of the members of the firm as individuals, and the fund out of which the appellees claim to be paid, was raised from, or belongs to, the individual estates of the said John Knouf and Peter Heilman. It will thus be seen, that there are not two funds in the hands of a common debtor. There are, in point of fact, three funds, one belonging to Knouf & Co., one to John Knouf, and the third to Peter Heilman. The rule as to subrogation exists only where both funds are in the hands of a common debtor of both creditors. *Lloyd v. Galbraith*, 8 Casey 103; *Fessler v. Hickernell*, 1 Norris 150.

There is the further objection that the order throws the payment of the partnership debts upon the individual estates of John Knouf and Peter Heilman. It is impossible for us in this proceeding, to determine the equities between the partners, and *Fessler v. Hickernell*, is an authority in point, that such equities cannot be considered upon a motion for subrogation. To entitle a party to subrogation, his equity must be strong, and the case clear. In such applications great care should be taken by the court, that the subrogation will work no injustice to the rights of others: *Erb's Appeal*, 2 Barr 296. And it will never be allowed, where the equity of the party seeking it is no stronger than the equity of the party affected by it.

It is clear that *Knouf Appeal* is readily distinguishable from the instant case. Appellant argues that, "The property owned by the debtor, South Shore Development Corporation, represented a fund. The assets owned by the Harrises represent a second fund. These funds are not in the hands of a common debtor or [of] both creditors." (Appellant's brief, Page 10) What is owned by the Harrises is not at issue here. We are only deciding that appellee should not be any worse off than appellant in attempting to collect the amount which he is required to pay to satisfy the mortgage executed by South Shore Development Corporation.

Order affirmed.