356 Pa. Superior Ct. 502 (1986)
515 A.2d 6
Louis ETTER and the Estate of Sidney Goldberg, t/a Goldberg Bros. Co., Appellant,
v.
INDUSTRIAL VALLEY BANK AND TRUST COMPANY and the Pollock Corporation.
Supreme Court of Pennsylvania.
Argued May 28, 1986.
Filed September 9, 1986.
*504 Paul Shalita, Philadelphia, for appellant.
Alan Gershenson, Philadelphia, for appellee.
Before WIEAND, BECK and JOHNSON, JJ.
BECK, Judge:
Phoenixville Recycling Corporation (Recycling) purchased the scrap metal business of appellant, Louis Etter and the Estate of Sidney Goldberg, t/a Goldberg Brothers Company (Goldberg) for $550,000. The purchase was financed in part by a $450,000 loan from Industrial Valley Bank and Trust Company (IVB) to Recycling secured by (i) a mortgage on the land being purchased from Goldberg, (ii) a security interest in the machinery and equipment purchased from Goldberg, and (iii) a suretyship contract wherein The Pollock Corporation (Pollock) agreed to be Recycling's surety for twenty-five percent (25%) of the outstanding loan. Pollock had a business relationship with Recycling.
At the time of purchase, Recycling paid Goldberg $400,000 and as security for payment of the additional $150,000 due on the purchase price, Recycling gave Goldberg a second mortgage on the land bought from Goldberg and a security interest in the machinery and equipment bought from Goldberg. IVB was thus Recycling's senior creditor with a lien position and security interest prior to that of Goldberg, Recycling's junior creditor.
In 1980, Recycling defaulted in its IVB loan repayment, and IVB then sought payment from Pollock as Recycling's surety of 25% of the 1980 loan balance. At the time of Recycling's default, the loan balance was $442,573.26. Therefore, Pollock was obligated under the suretyship *505 agreement to pay approximately $110,000, i.e. one-fourth of the balance due at the time of Recycling's default. In 1981, Pollock paid $160,000 to IVB and received from IVB: 1) a release from the suretyship contract; 2) an assignment of the right to receive repayment of Recycling's debt; and 2) the security instruments held by IVB relative to the debt.
Thereafter Pollock as assignee of IVB's interests directed that the machinery and equipment which Recycling had purchased from Goldberg be seized and offered at a public sale. Pollock was the sole bidder at the sale and obtained the machinery and equipment for $10,000. Subsequently, Pollock commenced a mortgage foreclosure action against the land Recycling had bought from Goldberg. Before the date on which the land was to be sold at a sheriff's sale pursuant to the mortgage foreclosure proceedings, Goldberg filed a complaint in equity which requested, inter alia, that the trial court enter an order stating that Pollock had "received from [Recycling] sufficient value in payment of all obligations due Pollock, and that accordingly, the judgment and mortgage lien . . . against the . . . Recycling. . . property should be declared to be junior and subordinate to the existing liens in favor of [Goldberg]." Goldberg's Amended Complaint in Equity at 6.
After Pollock had filed an answer to the complaint and the parties had engaged in various forms of discovery, the parties[1] filed motions for summary judgment. Goldberg's motion for summary judgment was denied, and Pollock's motion for summary judgment was granted in part. This appeal from the February 11, 1985, order granting partial summary judgment followed.[2] We affirm.
*506 Summary judgment may be properly entered only when there exists no genuine issue as to any material fact and the party seeking summary judgment is entitled to such judgment as a matter of law. Pa.R.C.P. No. 1035(b); Johnson v. Baker, 346 Pa.Super. 183, 499 A.2d 372 (1985). The facts of the present case are uncontested. We conclude that the trial court correctly decided the issue of law and therefore properly granted partial summary judgment in favor of Pollock.
The issue before us is whether a surety (Pollock) who satisfies its obligation to the creditor (IVB) by paying a portion of the principal obligor's (Recycling's) indebtedness is barred from assuming the creditor's senior lien position as against a junior lienholder of the debtor (Goldberg).
We hold that Pollock, having made full payment of its obligation under the surety agreement, was no longer in the position of surety but in the position of a bona fide third party assignee and, therefore, is not barred from assuming IVB's senior lien position as against the junior lienholder.
The trial court's order which granted Pollock partial summary judgment was premised on Pollock's status as a third party assignee rather than a surety as to the remaining debt. We agree with this part of the trial court's analysis, and conclude that after satisfying its obligation under the suretyship agreement, Pollock like any other third party assignee could succeed to IVB's first secured position for the full amount of Recycling's debt to IVB.
Challenging the trial court's conclusion, Goldberg asserts that Pollock was ineligible to accept an assignment of Recycling's debt because Pollock was Recycling's surety. As we explained in Continental Bank v. Axler, 353 Pa.Super. 409, 510 A.2d 726 (1986), (reargument denied, June 30, 1986):
a suretyship arrangement arises when a creditor refuses to extend credit to a debtor unless a third party (the surety) agrees to provide additional security for repayment of the debt by undertaking the debtor's obligation to the creditor if the debtor fails to perform. . . . In *507 general terms, a suretyship represents a three-party association wherein a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety.
Id., at 729.
The law has recognized a special relationship between the principal debtor and his surety based upon reciprocal duties, Restatement of Security §§ 82, 103, 104, 112 (1941), and mutual confidence. Restatement of Restitution § 80 Comment a (1936). The core of this special relationship is the surety's obligation to repay the debt of the principal debtor if the latter defaults due to inability to repay the creditor.[3]Thommen v. Aldine Trust Co., 302 Pa. 409, 153 A. 750 (1931); Axler; Restatement of Security §§ 82, 112.
Goldberg incorrectly relies on principles of the law of suretyship that evolved to protect a principal debtor from sharp dealings by his surety. Specifically, Goldberg asserts that a surety cannot speculate with the interests of the principal obligor. In order to prevent such speculation a surety's right of recovery from its principal debtor is limited to the amount the surety reasonably paid out to satisfy its obligation. In other words, a surety who compromises the debt of the principal obligor with the creditor and pays the creditor less than the face amount for satisfaction of the principal obligor's debt has a limited right of reimbursement from the principal obligor. The surety is not entitled to be reimbursed for the face amount of the indebtedness, but is limited to the amount reasonably paid out. Tooks v. Indemnity Insurance Company of North America, 381 Pa. 607, 114 A.2d 135 (1955); Bishoff v. Fehl, 345 Pa. 539, 29 A.2d 58 (1942); Restatement of Security §§ 104, 105, 106; Restatement of Restitution § 80. The surety cannot *508 use his position to enrich himself to the detriment of the principal obligor.
"The surety's right of reimbursement is equitable in origin," Restatement of Security § 104 Comment f, and is premised upon the concept of preventing unjust enrichment. Id. Comment h.; see Bishoff. Neither the principal debtor nor the surety may intentionally profit at the other's expense. Restatement of Security §§ 104, 108, 110, 111; Restatement of Restitution § 80. "If the surety can satisfy his own obligation and obtain a discharge of the principal's duty by paying less than the amount nominally due by the principal, [the surety's] reasonable outlay [extent of reimbursement] is limited to that amount." Restatement of Security § 104 Comment d; Restatement of Restitution § 80 Comment a.
Based on this principle Goldberg would have us limit Pollock's recovery to the amount it actually paid in discharge of its obligations as a surety. He would like us to hold that once a party is a surety, it cannot profit from any transaction surrounding the suretyship. Goldberg misperceives the law. First, the principle of law Goldberg asserts is applicable only between sureties and principal debtors. Second, we conclude that IVB's assignment to Pollock was not to Pollock as a surety but to Pollock as a third party assignee not bound by the limitations of the law of suretyship.
Goldberg also suggests that the limitations imposed on the surety in dealing with his principal are also applicable to a junior lienholder. The principal that the surety cannot speculate with the interests of his principal obligor has no application to a junior lienholder, and Goldberg has stated no precedent, no logical argument and no valid policy reason to extend the principle of law to a junior lienholder.
After Pollock satisfied the obligation under the suretyship agreement for about $110,000 it was no longer a surety. Upon payment of $50,000, it became a bona fide third party assignee of the entire debt and stepped into *509 IVB's shoes. An assignment extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee. Purman Estate, 358 Pa. 187, 56 A.2d 86 (1948); Restatement (Second) of Contracts § 317 (1979). "Under the law of assignments, the assignee stands in the same shoes as the assignor. An assignment does not confer on the assignee any greater rights than those possessed by the assignor. . . . However, the assignee's rights are not inferior to those of the assignor." U.S. Steel Homes Credit Corp. v. South Shore Development Corp., 277 Pa.Super. 308, 314, 419 A.2d 785, 789 (1980).
As in the instant case the assignment can transfer the assignor's security position to the assignee. "A purchase of a debt is a purchase of all the securities for it, whether named or not at the time of the assignment." Beaver Trust Co. v. Morgan, 259 Pa. 567, 570, 103 A. 367, 369 (1918). In purchasing a debt, an assignee acquires all rights of priority or preference and all collateral securities and liens previously held by the assignor to secure repayment of the debt. Himes v. Cameron County Container Corporation, 497 Pa. 637, 444 A.2d 98 (1982); U.S. Steel Homes, 277 Pa.Super. 308, 419 A.2d 785; Andrews v. The Marine National Bank of Erie, 153 Pa.Super. 149, 33 A.2d 75 (1943).
Admittedly, Pollock made a profitable deal in purchasing the balance of Recycling's debt at a discount, i.e. at less than the face value of the remaining unpaid debt. It appears that IVB made a business decision to accept approximately $50,000 as consideration for the assignment of a claim with a face value of more than $300,000. Recycling had already defaulted in repayment of its debt, and IVB undoubtedly anticipated difficulty in recouping additional payment from Recycling.[4]
*510 We conclude that Pollock has assumed the senior creditor position formerly enjoyed by IVB with respect to the collateral for Recycling's loan repayment, and Goldberg remains Recycling's junior creditor.
Judgment affirmed.
NOTES
[1] By agreement of counsel for Goldberg and counsel for Pollock, litigation was discontinued as to Industrial Valley Bank and Trust Company (IVB). Praecipe of December 17, 1984, filed by counsel for Goldberg and counsel for Pollock.
[2] An order denying a motion for summary judgment is interlocutory and not appealable. Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 471 A.2d 493 (1984). The order granting partial summary judgment is appealable in accordance with the discussion of appealability in Praisner v. Stocker, 313 Pa.Super. 332, 459 A.2d 1255 (1983).
[3] The surety has a right to equitable relief in the form of exoneration if the principal debtor's obligation to the creditor has matured and the principal debtor is able to satisfy the obligation but refuses to do so. Allegheny Plastics, Inc. v. Stuyvesant Insurance Co., 414 Pa. 381, 200 A.2d 775 (1964); Restatement of Security § 112 (1941).
[4] There is some suggestion by Goldberg that because Recycling did not contest the assignment to Pollock, the assignment resulted from collusion among Recycling, Pollock, and IVB. In fact, however, the debtor's approval of an assignment is not necessary to make an assignment valid. Commonwealth v. Baldassari, 279 Pa.Super. 491, 421 A.2d 306 (1980). Therefore, regardless of any protest which Recycling might have made, IVB could still have made an effective assignment to Pollock.