238

522 A.2d 562

**B. LIPSITZ COMPANY, a Corporation**

v.

**Roy WALKER, an Individual, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 7, 1986.

Filed Jan. 14, 1987.

Reargument Denied March 20, 1987.

Conrad A. Johnson, Pittsburgh, for appellant.

James P. McKenna, Jr., Pittsburgh, for appellee.

Before DEL SOLE, KELLY and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of Allegheny County denying a petition to strike and/or open a confessed judgment entered against the defendant/appellant, Roy Walker.[1] We reverse in part and affirm in part.

On December 30, 1983, the defendant executed a non-negotiable judgment note in the amount of $80,000, payable on demand, in favor of Pittsburgh National Bank. The note contained a confession of judgment clause. On June 25, 1985, the note was assigned by the bank, for value received, to B. Lipsitz Company, the plaintiff/appellee. The next day the plaintiff confessed judgment against the defendant (note plus interest) for $88,948.47.

On July 26, the defendant filed a petition seeking to open judgment, a rule to show cause and a stay of execution. In support of the petition, the defendant averred that he signed the December 30 note merely as an "accommodation" for his then counsel, Herman Lipsitz—president/joint owner with his wife of B. Lipsitz Company, upon being advised by him that B. Lipsitz Company and the plaintiff were experiencing financial difficulty. He also alleged that he never received any portion of the $80,000 recited in the note.

The court below stayed all execution proceedings, made the rule returnable within twenty days and ordered the parties to proceed in accordance with Pa.R.Civ.P. 209 by order of even date.

1. See Pa.R.App.P. 311(a)(1).

On August 21, an answer to the petition to open was filed by the plaintiff denying that it had represented to the defendant (through Herman Lipsitz) that it was experiencing financial difficulty, or that the note was executed simply as an accommodation or favor to it without consideration. On the contrary, the plaintiff alleged that the defendant was indebted to it for $108,648.17 in merchandise (cigarettes and book matches) received but never paid for, and, thus, the requested demand for payment of the debt by the plaintiff was made. The defendant, supposedly, obtained a loan from Pittsburgh National for $80,000 for partial payment on this debt at the request of the plaintiff. When the defendant failed to make payments on principal and interest, the plaintiff was forced to pay back the loan. This was so, according to Herman Lipsitz, because B. Lipsitz Company was the "guarantor" on the note. In turn, after payment of the note was satisfied, Pittsburgh National assigned the judgment note to the plaintiff. Further, the plaintiff specifically denied that no consideration existed in the transaction producing the judgment note.

In the new matter portion of the reply, the plaintiff argued that the defendant's failure to assert equities and a valid defense warranted a denial of his petition to open judgment.

In a response to the rule to show cause order, the defendant contended that he "recently discovered another meritorious defense to the Confession of Judgment", i.e., Pittsburgh National's earlier confession of judgment (of May 6, 1985) on the subject note for $10,000 restricted the assignee (plaintiff) of the same note to the receipt of $10,000 and not $80,000.

The defendant sought leave to amend his earlier petition to open and proceed with depositions and other discovery matter prior to scheduling an argument date. The court agreed and entered an order on September 24 granting the defendant "leave to amend his Petition and ... to proceed with depositions in accordance with Rule 209."

On November 20, the defendant filed an amended petition alleging, for the first time, that: (1) the plaintiff "fraudulently induced" him to execute the $80,000 note to benefit "Herman Lipsitz and/or B. Lipsitz Company"; (2) Pittsburgh National had already filed a confession of judgment against him (at GD 85–8258) on the same non-negotiable judgment note which the plaintiff based its confession of judgment; and (3) the plaintiff's principal (Herman Lipsitz) fraudulently induced the defendant to execute the note in question in violation of Disciplinary Rule 5–104(A). Lastly, as was argued in the earlier petition, the defendant repeated the assertion that (Attorney) Herman Lipsitz represented that he (Lipsitz) and/or B. Lipsitz Company were experiencing financial difficulty.

A brief in support of the amended petition was filed recounting testimony given during the deposition of Herman Lipsitz and Joel A. Murphy (Assistant Manager in charge of loans at Pittsburgh National), each having been taken on October 8, 1985. In the "Discussion" portion of the brief, the defendant pointed to: 1) the satisfaction of the note prior to assignment causing the assignee (plaintiff) to take subject to all defenses available against the original assignor (bank); 2) the lack of consideration for the note; 3) the existence of fraud by the plaintiff in the securement of the note; and 4) a violation by the plaintiff of Disciplinary Rule 5–104(A), counseling against an attorney and his client becoming intertwined in a venture without there first being full disclosure to and consent given by the client.

The plaintiff likewise filed a brief in support of its contention that the defendant was indebted to the plaintiff.

In an effort to extinguish a portion of the amount owed,, the plaintiff argued how it arranged for Pittsburgh National to loan the defendant $80,000, which was secured by a non-negotiable judgment note guaranteed by the plaintiff and credited to the defendant's outstanding account with the plaintiff. Also, mention was made of the disputed difference between an invoice listing $99,699.25 as owed the plaintiff and the $80,000 the defendant purportedly admit-

ted owing. This matter was resolved in the plaintiff's favor when it sued in arbitration, at No. 5768 of 1985.

Based on the pleadings, depositions, briefs and oral arguments presented in the case, the court below, by order dated November 25, 1985, denied the defendant's petition to strike and/or open judgment and discharged the July 26, 1985 order staying execution. Thereafter, a motion for post-argument relief, with a reply thereto submitted to the court, was filed and denied. This appeal followed.

■■■■ Before addressing the issues raised for our consideration, we need to set forth the standards utilized in assessing the denial of a petition to strike and/or open a judgment. The former places upon us a duty to inquire whether an irregularity appearing on the face of the instrument in question existed sufficient to warrant the judgment struck (see *Bethlehem Steel Corp. v. Tri-State Industries*, 290 Pa.Super. 461, 434 A.2d 1236 (1981)), whereas the latter is an appeal to the equitable powers of the court and its disposition of the petition will not be disturbed on appeal, unless a clear abuse of discretion is shown. See *Funds For Business Growth, Inc. v. Woodland Marble and Tile Co.*, 443 Pa. 281, 278 A.2d 922 (1971). As noted in *First Seneca Bank and Trust Co. v. Laurel Mountain Development Corp.*, 324 Pa.Super. 352, 471 A.2d 875 (1984), the precepts controlling the opening of a confession of judgment are clearly established, i.e., prompt action must be taken by the judgment debtor, allegation must be made to a meritorious defense and evidence of a defense must be presented such that the issues are for a jury to decide.

The first issue to be dealt with concerns Pittsburgh National's exercise of its right to confess judgment supposedly impairing the subsequent execution on the same note by the plaintiff, under the warrant of attorney clause, after the assignment of the note.[2]

2. The note specifically provides that the power to confess judgment is not expended with a "single exercise" of such a power. Rather, "the power shall continue undiminished and it may be exercised from time

The earlier execution, according to the defendant, exhausted the ability of the assignee to execute on the same note. We agree in part, and do so in a factual scenario which has heretofore not been addressed by an appellate court.

■ To start with, it is settled law in this Commonwealth that a judgment may be confessed but once for the same debt. This precept is exemplified in *Scott Factors, Inc. v. Hartley*, 425 Pa. 290, 228 A.2d 887 (1967), wherein an initial judgment of confession entered on a warrant of attorney by a representative of the plaintiff, who was not an attorney of record, constituted an exhaustion of the power to confess and rendered a subsequent judgment on the same instrument to rectify the error ineffectual.

Our Supreme Court, in reversing the lower court for refusing to strike the second judgment, wrote:

In Pennsylvania, we have long recognized and permitted the entry of a judgment by confession upon the authority of a warrant of attorney contained in an agreement between the parties. However, fully cognizant of the possibilities of abuse which might arise from the recognition of the right to enter such judgments by confession, our courts have been strict in passing upon the validity of judgments so entered. The entry of a valid judgment by confession can only be accomplished if such entry is. accomplished in rigid adherence to the provisions of the warrant of attorney; otherwise, such judgment will be stricken. The determination of the validity of such judgments rests upon a strict construction of the language of the warrant of attorney and any doubt as to the validity of such judgments must be resolved against the party entering the judgments.

The warrant constitutes a grant of authority by one contracting party to the other, upon the happening of a certain event, i.e., a breach of the terms of the agreement wherein the warrant is contained, to enter that which

to time as often as the holder shall elect, until such time as the holder shall have received payment in full of the debt, interest and' costs."

results ordinarily only after a trial of the issue between the parties, i.e., a judgment. Such judgment when entered carries with it the same legal consequences as any judgment of a court. Not only must the given authority be exercised in the exact manner agreed upon between the parties but also the authority, once exercised, ceases to exist.

Under our case law, it is clear beyond question that, once a judgment has been entered under a warrant of attorney, the authority to use the warrant vanishes and the warrant cannot again be exercised. Upon the entry of a judgment by confession under a warrant of attorney, the warrant is exhausted.... [T]his court said: 'When the first judgment was entered pro confesso, the power of attorney was exhausted and the warrant became functus officio. After the entry of the first judgment, neither the court, the prothonotary, nor the attorney who confessed the judgment, had power to do any act which would have the effect of giving vitality to an exhausted power. This is a settled rule of law in Pennsylvania and has been recognized by our courts for a century.' ...

In the case at bar, upon the entry of the first judgment, even though such entry was not in accord with the provisions of the warrant of attorney, the warrant of attorney ceased to have vitality upon which to enter the second judgment and the court below should have stricken off the judgment.

425 Pa. at 292–94, 228 A.2d at 888–89 (Citations omitted).

Instantly, the note afforded the bank or any holder thereof the power, without limitation as to exercise, to confess judgment until the debt was paid in full. Our Supreme Court construed a similar warrant of attorney in *American Bowling Club, Inc. v. Kanefsky*, 370 Pa. 136, 87 A.2d 646 (1952), which availed the lessor the authority to confess judgment as often as any rent was due; it read: "Such authority shall not be exhausted by one exercise thereof...." *Id.*, 370 Pa. at 136, 87 A.2d at 646. The Court in *Kanefsky* held that such a clause could not give authority to enter more than one judgment for the same debt.

In *Continental Bank v. Tuteur,* 303 Pa.Super. 489, 450 A.2d 32 (1982), a panel of this Court was confronted with the effect of a clause in a warrant of attorney which allowed for multiple exercises of one's right to confess judgment without exhausting this remedial, legal measure.

We reversed the trial court's conclusion that an earlier exercise of the right to confess judgment did not preclude a subsequent utilization of the warrant because of the non-exhaustion clause. In doing so, we observed that Continental Bank had entered judgment twice for the *same* debt and this it could not do. However, we did write in dictum that:

> We do not, of course, decide that such a confession of judgment clause could not be used to collect discrete parts of a debt as they come due. Here, Continental Bank did not use the clause to confess judgment for parts of a debt but rather to confess judgment for the entire debt twice.

303 Pa.Super. at 496 n. 2, 450 A.2d at 35 n. 2. See also *Citizens National Bank of Evans City v. Rose Hill Cemetery Association of Butler,* 218 Pa.Super. 366, 368 n. 2, 281 A.2d 73, 74 n. 2 (1971), wherein we observed that only a "... *full* exercise of a warrant of attorney in an instrument exhausts the warrant...." (Emphasis added)

■ The corollary we draw from the aforesaid is that severable portions of a debt can be sought to be collected with the use of a single warrant of attorney as each become due; provided, of course, the instrument is *not* used to collect the same portion of the debt already confessed. See Pa.R.Civ.P. 2953.[3]

■ In applying this concept of severability to preserving one's right to confessing judgment at bar, we do so in the

---

3. The Rule provides:

**Rule 2953. Successive Actions**

(a) Where an instrument authorizes judgments to be confessed from time to time for *separate sums* as or after they become due, successive actions may be commenced and judgments entered for such sums.

form of a hypothetical, to-wit: Had the bank been the party-plaintiff seeking to recoup the monies claimed owed under the present confession of judgment, given the previous judgment for $10,000 confessed by the bank, would the teachings of *Scott* and *Kanefsky* cause us to strike the second judgment *at least with respect to that portion of the judgment attempting to collect what it had earlier sought to secure by confession?* We have no reservations in stating that the bank would have been estopped from seeking to obtain payment twice for the $10,000 earlier confessed.

The plaintiff, being the assignee of the bank, had rights equal to (but no greater than) the assignor. See *Etter v. Industrial Valley Bank and Trust Co.*, 356 Pa.Super. 502, 515 A.2d 6 (1986). Consequently, the bank's inability to execute on the note with regard to at least $10,000, because of the prior May 6 judgment against the defendant, impairs the plaintiff (assignee) as well. *Tuteur, supra.* In other words, of the $80,000 sought by the plaintiff, $10,000 was confessed by its assignor and the law does not permit a single warrant of attorney to be utilized to recoup a sum previously confessed but not recovered. *Scott, supra; Kanefsky, supra; Harr v. Furman*, 346 Pa. 138, 29 A.2d 527 (1943); *Tuteur, supra.*

■ However, the court below and this Court on review will only look at what was in the record when the judgment was entered in search for defects. See *Linett v. Linett*, 434 Pa. 441, 445–46, 254 A.2d 7, 10 (1969); *Langman v. Metropolitan Acceptance Corp.*, 318 Pa.Super. 381, 384 n. 1, 465 A.2d 5, 7 n. 1 (1983); *Conti v. Shapiro, Eisenstat, etc.*, 293 Pa.Super. 301, 305 n. *, 439 A.2d 122, 124 n. * (1981).

(b) If an instrument authorizes entry of judgments for money and in ejectment, the entry of judgment in ejectment shall not prevent the entry of judgment for money.

*Note:* The limits within which the plaintiff may have satisfaction under one or both of these judgments is a matter of substantive law. (Emphasis added) Even Rule 2953(a) specifically restricts successive actions to "separate sums" claimed due and collectible under a warrant of attorney in a note, as contrasted to the "same sum" of money already confessed.

Instantly, that translates into a determination that the defect (repeat entry of judgments on the same note) was not evident from the face of the original judgment note. Only with the submission of the defendant's reply to the rule to show cause at point 5, which followed the defendant's petition to open and the plaintiff's answer thereto, do we learn that Pittsburgh National allegedly had filed a complaint to confess judgment on the same note assigned to the plaintiff. See Pa.R.Civ.P. 2951(b) & (c)(3), (4).

Consequently, inasmuch as the defect was not apparent on the face of the record, we cannot state that the court below erred in not striking judgment. Rather, the existence of the prior judgment was a defense properly raised by the defendant, as was permitted by order of court, in his amended petition to open judgment. See *Parliament Industries, Inc. v. William H. Vaughan & Co.*, 501 Pa. 1, 13, 459 A.2d 720, 726 (1983); *DeRose v. Lombardi*, 413 Pa. 258, 261, 196 A.2d 336, 338 (1964); see also *Haggerty v. Fetner*, 332 Pa.Super. 333, 343, 481 A.2d 641, 646 (1984).

█ The defendant's argument that the plaintiff is foreclosed from confessing judgment on the entire $80,000 sued upon is partially correct. Under our holding today, the earlier confession of judgment by the bank on a segment of the debt, i.e., $10,000, precludes the assignee (plaintiff) from confessing judgment as to that amount. Our recourse in such an instance, i.e., where judgment was entered for an item clearly within the warrant, but for an extensive amount, rather than strike, will be to remand to allow a modification of the judgment to reflect the correct dollar amount permitted to be recouped under the plaintiff's warrant of attorney. See *Roche v. Rankin*, 406 Pa. 92, 97, 176 A.2d 668, 672 (1962).

The next issue claims an abuse of discretion on the part of the court below in ignoring the evidence of record and reaching outside of the record to an arbitration proceeding instituted by the plaintiff against the defendant as the "predicate" for its refusal of the defendant's petition.

Our review of the record (pleadings and depositions) indicates that B. Lipsitz Company was engaged in the

business of selling wholesale cigarettes, tobacco and confectionaries to cigarette vendors, retail stores and other wholesalers, one of whom was the defendant, d/b/a Walker Vending Service.

For some fifteen years the business relationship between the two litigants had fostered to the point where the defendant had an open account with B. Lipsitz Company, i.e., he could collect the merchandise and not have to pay for it until the following week. This is what happened here, except that the defendant never paid. In fact, the defendant had run the debt up to $50,000 and still was allowed an open account because of his assurance to Herman Lipsitz that he would pay the indebtedness. However, when the account rose to more than $100,000, when one includes four "non-sufficient funds" (N.S.F.) checks issued by the defendant, Herman Lipsitz spoke to the defendant.

According to the deposition testimony of Mr. Lipsitz, the only matter that the defendant did not acknowledge owing, which was ultimately resolved in favor of the plaintiff by arbitration, was a dispute over an N.S.F. check for more than $19,000. But the witness recited that the defendant conceded owing up to $80,000, and that is when arrangements were put in motion with the bank to advance a loan to the defendant for the amount stated. This was evidenced by a non-negotiable judgment note signed by the defendant on December 30, 1983.

Mr. Lipsitz remarked unequivocally, on direct and cross-examination, that the defendant admitted owing at least $80,000 and that he would sign a note to that effect.

The money secured from the bank by the defendant was credited to the plaintiff's account. When the defendant failed to make the monthly payments, the plaintiff, as guarantor, paid the note.

At one point the plaintiff confronted the defendant with his default and was offered a pledge of the defendant's stock in Walker Vending Service to assure that payment on the note would be forthcoming. A stock pledge agreement, making reference to the debt of the defendant to the plaintiff, was drafted but never signed by the defendant.

The deposition of Joel A. Murphy, the Assistant Manager of Pittsburgh National (in the Potter office where the loan was secured), was corroborative of Mr. Lipsitz's version of what transpired. For instance, Mr. Murphy recalled the standard procedure followed by Pittsburgh National in approving a loan.

First, a financial statement would have to be prepared on the applicant. Although such a statement was not taken in the defendant's case on a Pittsburgh National form, there was in the bank's file a loan application for $80,000 on a Union National Bank form.

Since Mr. Murphy was not the initial loan official who would have met with the defendant, he offered an explanation for the Union National loan form being in Pittsburgh National's file:

I can't answer that a hundred per cent but as I mentioned previously, there are times an applicant, when they apply to us, they say, well, I just applied to such-and-such and I have my financial statement with another bank and I [Mr. Murphy] will let you use that.

In essence, the witness was saying that the Union National form was being used in the defendant's case as "an application", a personal financial statement necessary as a prerequisite to attaining a loan with Pittsburgh National. Therefore, the first requirement for securing a loan was met.

The second requirement of a credit check did not appear to have been prepared in the defendant's case. Nonetheless, the approval of the loan was initialed by three bank officials. This form (Exhibit # 2) lists the amount of the loan ($80,000), the borrower (Roy Walker) and the endorser/guarantor (B. Lipsitz Company and Herman Lipsitz). In the "Remarks" section appears the following comments by the bank:

Today $80,000 was advanced to the above at 12.5% on a demand unsecured basis. Purpose of this loan is to pay monies due the B. Lipsitz Company. Repayment will be at $5,000.00 monthly plus interest with the stipulation that with the first default on payment the B. Lipsitz Company will make payment. Proper approval by Albert

Allen. Guaranty agreement of Ray and Claire Walker has been waived per Albert Allen.

Mr. Murphy was not able to produce the actual document evidencing the guarantor's signature since it would have been the practice of the bank to return this item to the guarantor upon payment of the loan. Instead, the witness opined that from the content of Exhibit # 2 there was reason to believe that such a document was executed as part of the loan process. Also, when counsel for the defendant asked the witness whether there could be any reason for the "guaranty" on the back of the non-negotiable note not to be signed, he stated: "Most of the time, we do not get it endorsed; very seldom." But, the witness had no doubt in his mind that B. Lipsitz Company, as well as Herman Lipsitz, would have been the guarantor.

More importantly, the loan officer remembers speaking with the defendant for "about an hour" in regard to the loan. As put by the witness:

We would have discussed the loan. We're talking about $80,000. This is money owed to B. Lipsitz Company. * * There would be no reason for Mr. Walker to be in Pittsburgh National Bank unless we were discussing the loan monies owed to B. Lipsitz Company.

Further, in regard to payment, Mr. Murphy only saw checks endorsed by B. Lipsitz Company or Herman Lipsitz, and never saw any from the defendant.

The defendant was never deposed, so the testimony of Messrs. Lipsitz and Murphy remained uncontradicted. Compare *Danovitz v. Portnoy*, 399 Pa. 599, 161 A.2d 146 (1960). Thus, we find that the aforementioned recitation of the facts is supportive of the court's determination below that the defendant obtained a loan to repay monies owed to the plaintiff. To do otherwise, would be to take a myopic view of the evidence.

Contrary to the defendant's contention that the court below looked to matters de hors the record, i.e., an arbitration proceeding rendered favorable to the plaintiff, as a basis for the ruling is unfounded. The court merely was

reconstructing the events leading up to the case under review, and, in doing so, made mention of the arbitration proceeding. This is not unreasonable since this subject was broached during Herman Lipsitz's deposition. Further, it was mentioned three times in the "Discussion" section of the plaintiff's brief filed with the court below and of record. Thus, there was "record" evidence of an arbitration proceeding, and the court's reference to it in recounting the facts falls far short of the defendant's portrayal of the court's *reliance* thereon as the "predicate" for the ruling entered.

▪ The third error argued deals with the judgment note being paid and satisfied prior to its assignment thus precluding the plaintiff from executing a confession of judgment.

The defendant fails to realize that the record buttresses the plaintiff's assertion that it paid for the $80,000 loan advanced to the defendant by the bank and later credited to his account with the plaintiff.

The defendant's default on the note resulted in the plaintiff "making good" on the debt because of its "guarantor" status. With payment on the note, the plaintiff purchased the debt and became an assignee of the bank and, as a result, was entitled to enforce payment on the note just as the bank could have done. See *Etter, supra,* 356 Pa.Super. at 506, 515 A.2d at 9.

The fourth issue placed before us is equally unmeritorious in that the defendant's position as an "accommodation maker" for the plaintiff is refuted by the record. Compare *Hess v. Gower,* 139 Pa.Super. 405, 11 A.2d 787 (1940).

The last two claims of the defendant to be addressed revolve around the alleged commission of error on the part of the court below in not considering the defendant's amended petition and argument alleging fraud by the plaintiff.

▪ Again, our examination of the record does not support either contention. Especially is this so with regard to the fraud argument where the defendant produced *no* evi-

dence to establish by clear, precise and indubitable facts the occurrence of such a claimed impropriety. See *Appeal of English*, 119 Pa. 533, 541, 13 A. 479 (1888). Therefore, even with the court's failure below to address the issues, we find them to be without support in the record and not warranting the relief requested.

Order reversed and the case is remanded to allow an amendment of the judgment to reflect the proper dollar figure, arrived at after deducting the amount confessed by the bank on its May 6, 1985 judgment against what the plaintiff was awarded instantly.[4] In all other regard, we find the court acted properly under the established law in pursuing the course it did as to the petition to strike and/or open judgment.

KELLY, J., concurs in the result.

---

**4.** The May 6, 1985 judgment, seeking principal, interest and attorney's fee, as is reflected in the exhibits attached to Joel A. Murphy's deposition, comes to $11,680.17, while the present judgment at issue tabulates to be $88,948.47. The difference between the two, i.e., $77,268.30, would constitute the amount which could be confessed under the warrant of attorney.