561 A.2d 745

Richard REICHERT, an Individual, and Jean Reichert, His Wife, Appellants,

v.

TRW, INC. CUTTING TOOLS DIVISION; Fullerton Tool Company, Division of Curry Industries; Bassett Rotary Tool Company; Cleveland Cutting Tools, Incorporated; Falcon Tool Company, Inc.; Sandvik, Inc.; Greenleaf Corporation; Adamas Corporation; Weldon Tool Company; ITW Drills and End Mills, a Division of Illinois Tool Works, Inc.; Colt Industries, Fastcut Tool Operation; Union Twist Drill, a Division of Litton Industrial Products, Inc.; Colt Industries, Crucible Specialty Metal Division; Do All Company; Conical Tool Company; Paul R. Gresswein & Co., Inc.; Latrobe Steel Company; NGK Metals, Formerly the Berylium Corporation; General Electric Company (Carboloy Systems Department); Wolverine Cutter Co.; Newcomer Products Inc.; TRW, Inc., Drill and End Mill Division and Atrax Company; and S.G.S. Tool Company. (Two Cases)

Superior Court of Pennsylvania.

Argued March 2, 1989.

Filed June 22, 1989.

Reargument Denied Aug. 4, 1989.

418

Robert L. Ceisler, Washington, for Reichert, appellants (at 307 and 627).

Richard B. Tucker, III, Pittsburgh, for Falcon Tool, appellee (at 307 and 627).

James S. Ehrman, Pittsburgh, for Adamas Corp., appellee (at 307 and 627).

Before CIRILLO, President Judge, and BROSKY and TAMILIA, JJ.

CIRILLO, President Judge:

Appellants, Richard and Jean Reichert, appeal from an order entered on December 30, 1987, by the Court of Common Pleas of Erie County, striking the default judgment entered against Adamas Carbide Corporation [hereinafter Adamas]. The Reicherts also appeal from an order entered by the Court of Common Pleas of Erie County on March 3, 1987, granting the petition of appellee Falcon Tool Co., Inc. [hereinafter Falcon] to strike the default judgment entered against it. Pursuant to the agreement of counsel, the Reicherts' appeals from these orders have been consolidated.

The events leading up to this consolidated appeal can be summarized as follows. On June 27, 1986, Richard and Jean Reichert filed a complaint against various defendants, including the appellants Adamas and Falcon, seeking to recover for injuries allegedly suffered by Mr. Reichert as a result of his having been exposed to tungsten, carbide, tungsten carbide, cobalt, and specialty steels which were

present in the products sold, manufactured, or distributed by the defendants.[1]

In October of 1986, the Reicherts filed a praecipe to have their complaint reinstated and instructed the Erie County Sheriff's Office to serve the complaint on both Adamas and Falcon by certified mail. The sheriff's service of process report on Adamas indicates that the Sheriff's Office followed the Reicherts' instructions; the complaint was sent to Adamas by certified mail on October 3, 1986. The address to which the complaint was sent is listed as 666 Boyce Road, Kennilworth, New Jersey. The return receipt accompanying the complaint was signed on October 6, 1986, by a Ray Sachlantz. His signature appears on the line marked "Signature—Addressee."

The sheriff's service of process report on Falcon also indicates that the Sheriff's Office complied with the Reicherts' request to serve their complaint on Falcon. Again, the report shows that the complaint was sent to Falcon by certified mail on October 3, 1986, and the return receipt reflects that the complaint was received on October 6, 1986. The signature appearing on the receipt is that of an employee of Falcon; his signature appears on the line marked "Signature—Addressee."

Neither Adamas nor Falcon responded when served with the Reicherts' complaint. The Reicherts, consequently, sent both corporations a notice of default for failure to answer their complaint. The notice was sent to Adamas on January 22, 1987, and to Falcon on March 9, 1987. As with the complaint, neither corporation responded to the notice. The Reicherts, therefore, filed a praecipe for judgment against both corporations and default judgments were entered against them. The default judgment against Adamas was entered on February 5, 1987; the default judgment against Falcon was entered on March 26, 1987.

1. The Reicherts named twenty-two defendants in their complaint. This appeal, however, concerns only those events which transpired between the Reicherts, Adamas, and Falcon.

Prior to the dates upon which the default judgments were entered against Adamas and Falcon, one of the defendants not involved in this appeal filed preliminary objections to the Reicherts' complaint, alleging, *inter alia,* that the complaint was vague and ambiguous and that it failed to inform the defendants of the nature of the claims asserted against them. The trial court agreed and, on February 3, 1987, entered an order directing the Reicherts to file a more specific pleading within seventy-five days. The Reicherts filed their amended complaint on March 19, 1987, seven days before the default judgment was entered against Falcon. The Reicherts did not, however, serve the complaint on Falcon; in addition, they did not endorse the complaint with a notice to plead.

Thereafter, Adamas became aware of the Reicherts' suit. On June 16, 1987, Adamas filed a petition to open and/or strike the default judgment which had been entered against it. The trial court then issued a rule upon the Reicherts to show why Adamas's petition should not be granted. They filed their answer to Adamas's petition and the court's rule, to which Adamas, in turn, filed its reply. Adamas had depositions taken in support of its petition. In addition, the corporation filed an extensive affidavit containing all the names and signatures of its employees as of October 6, 1986, the date on which the complaint was allegedly received and signed for by one of its employees.

A hearing on Adamas's petition was held by the trial court after which the court concluded that rule 424 of the Rules of Civil Procedure requires service on foreign corporations such as Adamas to be made by hand delivery. Based on this determination, the trial court filed an order on December 30, 1987, striking the judgment entered against Adamas. The Reicherts filed an appeal from this order.

■ Falcon also eventually became aware of the suit commenced by the Reicherts, and, on October 21, 1987, filed a petition to strike and/or open the default judgment entered against it. After a rule to show cause why the judgment should not be stricken or opened was issued upon

the Reicherts, they filed a response to Falcon's petition. Falcon then filed an amended petition and an answer raising new matter to which the Reicherts dutifully responded. Depositions were subsequently taken. Thereafter, on March 3, 1988, the court entered an order and opinion granting Falcon's petition to strike the default judgment entered against it. In the opinion, the court explained that its reasons for granting Falcon's petition were twofold: (1) Falcon was not served with the Reicherts' original complaint in conformance with Pa.R.C.P. 424; and (2) Falcon had not been served with the Reicherts' amended complaint as required by Pa.R.C.P. 440. Shortly after the court entered its order granting Falcon's petition, the Reicherts filed an appeal from it. This appeal was then consolidated with the previous appeal filed by the Reicherts contesting the trial court's order striking the default judgment entered against Adamas.[2]

On appeal, the following issues are raised for our review: (1) did the trial court err in striking the judgments entered against Adamas and Falcon on the basis that rule 424 of the Pennsylvania Rules of Civil Procedure requires service of process on foreign corporations to be made by hand delivery; and, if so, (2) did the trial court also err in striking the judgment entered against Falcon on the additional basis

**2.** The Reicherts filed these appeals pursuant to Pa.R.A.P. 311(a)(1). This rule provides, in pertinent part:

(a) **General Rule.** Except as otherwise prescribed by general rule, an appeal may be taken as of right from:

(1) Affecting Judgments. An order opening, vacating or striking off a judgment, or refusing to open, vacate or strike off a judgment. If orders opening, vacating or striking off a judgment are sought in the alternative, no appeal may be filed until the court has disposed of each claim for relief.

Pa.R.A.P. 311(a)(1). In the present case, the trial court disposed of each claim for relief since it granted appellees' petitions to strike and thereby rendered moot appellees' petitions to open. *Hertzog v. Jung*, 363 Pa.Super. 439, 442 n. 1, 526 A.2d 425, 427 n. 1 (1987), *appeal denied*, 516 Pa. 641, 533 A.2d 712 (1987) (appellant filed petition to strike and/or open confessed judgment; despite absence of any explicit order of trial court disposing of petition to open, appeal from trial court order striking judgment considered timely).

that the Reicherts failed to serve Falcon with a copy of their amended complaint.

Initially, we note that in reviewing a decision of a trial court to strike a judgment, an appellate court will reverse the decision of the trial court only for a manifest abuse of discretion or an error of law. *Bittenbender v. Southeastern Pennsylvania Transportation Authority*, 362 Pa.Super. 243, 248, 523 A.2d 1173, 1176 (1987), *allocatur denied*, 517 Pa. 602, 536 A.2d 1327 (1987). A motion to strike a judgment is in the nature of a demurrer directed to defects in the record. *Id.; National Recovery Systems v. Monaghan*, 322 Pa.Super. 183, 188, 469 A.2d 244, 246 (1983). Such a motion may be granted only when a fatal defect appears on the face of the record. *Parliament Industries v. William H. Vaughan & Co.*, 501 Pa. 1, 8, 459 A.2d 720, 724 (1983). If the record at the time the judgment was entered was self-sustaining, the judgment cannot be stricken. *Monaghan, supra*, 322 Pa.Superior Ct. at 188, 469 A.2d at 246. *See also* 16 Standard Pennsylvania Practice 2d § 91:104, at 555–57 (1983).

Resolution of the first issue which the Reicherts have presented for our review requires that we address an issue of first impression, namely, whether service on foreign corporations may be made by certified mail under the present rules of civil procedure governing service of process. This issue arises because there is an apparent conflict between two of the rules, specifically rule 404 and rule 424. While rule 404 permits service outside the Commonwealth to be made by certified mail, rule 424 appears to require service on corporations, both domestic and foreign, to be made by hand delivery.

Rule 404, entitled "Service Outside the Commonwealth," provides, in pertinent part:

Original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance of the reinstatement thereof:

(2) by any competent adult by mail in the manner provided by Rule 403....

Pa.R.C.P. No. 404, 42 Pa.C.S. (1987). Rule 403, to which rule 404 refers, reads:

If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant or his authorized agent. Service is complete upon delivery of the mail....

Pa.R.C.P. No. 403, 42 Pa.C.S. (1987). Finally, rule 424, which bears the caption "Corporations and Similar Entities," states:

Service of original process upon a corporation or similar entity shall be made by handing a copy to any of the following persons provided the person served is not a plaintiff in the action:

(1) an executive officer, partner or trustee of the corporation or similar entity, or

(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or

(3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa.R.C.P. No. 424, Pa.C.S. (1987).

█ Resolving the apparent conflict between rule 404 and rule 424, the trial court interpreted rule 424 as requiring service upon all corporations to be made by hand delivery and rule 404 as being inapplicable to foreign corporations. In adopting this view of these rules, the trial court relied on the general rule of construction that specific rules are to given effect over general ones.[3] *See* Pa.R.C.P. 132 (where

3. In applying this rule of construction, the trial court stated: "Pa.R. C.P. 424 is specific as to service upon corporations, whereas, Pa.R.C.P. 404 is general as to service made outside the Commonwealth." This rationale for holding that rule 424 restricts the manner of service upon a foreign corporation to hand delivery, however, is unsound because both rule 424 and rule 404 can be viewed as being either general or particular. The trial court could have just as easily reasoned that rule 424 applies specifically to service upon parties located outside this Commonwealth whereas rule 404 applies generally to service upon corporations. Because both of these rules can be viewed

conflict between two provisions is irreconcilable, the particular provision prevails over the general one).

Rules 400 through 441 of the Pennsylvania Rules of Civil Procedure presently govern service of process. These rules are the product of an effort to consolidate the rules of service into a single chapter of the Rules of Civil Procedure. In effectuating this revision in the rules, the old rules governing service, which were scattered throughout various chapters, were rescinded. Most of these old rules were replaced by one of the rules in the new consolidated chapter. However, because some of the old rules and sections of rules were repetitive, a number of them were not replaced. *See* Explanatory Comment, preceding Pa.R.C.P. 400, 42 Pa.C.S. (1987) ("These amendments result in a net reduction of nine entire rules of civil procedure and many other subdivisions of rules governing service"). The rules in the new consolidated chapter were drafted by the Civil Procedural Rules Committee and later adopted and promulgated by the Pennsylvania Supreme Court pursuant to the power vested in it by our state constitution. *See* Pa. Const. art. 5, § 10 (1969).

Prior to the consolidation of the rules, service upon a foreign corporation could be made by certified mail pursuant to rules 2180(c)(2) and 2079(c)(3). Section (c)(2) of rule 2180 stated:

(c) Outside the Commonwealth, the plaintiff shall have the right of service within ninety days after the issuance of the writ or the filing of the complaint or the reissuance of reinstatement thereof:

(2) in the manner provided by Rule 2079(c)(2), (3), (4) or (5)....

Pa.R.C.P. 2180(c)(2) (rescinded June 20, 1985, effective January 1, 1986). Rule 2079(c)(3) provided:

as general or specific, the rule of construction that specific rules take precedence over general ones is not helpful in resolving the issue of whether service upon foreign corporations can be effectuated by certified mail.

(c) Outside the Commonwealth, the plaintiff shall have the right of service within ninety days after the issuance of the writ or the filing of the complaint or the reissuance or reinstatement thereof

(3) by registered mail sent by the plaintiff, the plaintiff's attorney or any competent adult addressed to the last known address of the defendant and requiring a receipt returned by the post office.

Pa.R.C.P. 2079(c)(3) (rescinded June 20, 1985, effective January 1, 1986). With the advent of the new chapter of consolidated rules, rules 2180 and 2079 were rescinded. Rule 2180 now refers readers to rule 424; rule 2079 directs individuals to rule 404.

The Reicherts strenuously argue that subsections (b) through (d) of rule 2180 were not specifically rescinded when the new consolidated rules were enacted. They contend that only subsection (a) of rule 2180 was rescinded. While this section of the rule, they claim, was replaced by rule 424, the other sections of rule 2180 were not. Consequently, they state, service upon a foreign corporation by mail, as authorized by subsection (c) of rule 2180, continues to be a viable method of service. They add credence to this argument by citing to the "Disposition of Rescinded Rules" table, which is set out immediately preceding the present rules pertaining to service of process. This table shows that while many of the former rules of civil procedure dealing with service of process were replaced by rules in the 400 series, subsections (b) through (d) of rule 2180 were not specifically replaced by any of the new consolidated rules.[4] Fortifying their position further, the Reicherts point

---

4. The Disposition of Rescinded Rules table provides, in pertinent part:

| Former Rule | New Rule |
| --- | --- |
| 2079 | 404 |
| 2180(a) | 424 |
| 2180(b)–(d) | —— |

out that the Explanatory Comment preceding the new consolidated rules reveals that the new rules governing service were not intended to abolish the option of service by mail in situations where it had previously existed.

After careful consideration, we conclude that the Reicherts' assertions regarding rules 2180 and 424 are partially correct. While we disagree with their contention that subsections (b) through (d) of rule 2180 were not specifically rescinded, we agree with their statement that rule 424 was not intended to disallow service upon foreign corporations by certified mail.

■ Even the briefest glance at rule 2180, as it is presently set forth in the Rules of Civil Procedure, dispels any doubt that each and every subsection of rule 2180 was not rescinded. The rule states in no uncertain terms that it was "[r]escinded June 20, 1985," and that the rescission took effect on January 1, 1986. Moreover, because the new consolidated chapter, consisting of rules 400 thru 441, was intended to merge all the rules of service into one chapter, it is only logical to conclude that the old rules of service were rescinded in their entirety. Any other conclusion would frustrate the purpose of consolidating the rules into one chapter.

■ We turn our attention now to the Reicherts' argument that rule 424 was not intended to eradicate the option of serving foreign corporations by certified mail. As we stated previously, we find this position persuasive. Although the language of rule 424 appears to require service

*See* Disposition of Rescinded Rules table, preceding Pa.R.C.P. 400. This table, while offering some help in locating which rules in the new chapter replaced the old rules of service, is by no means an accurate index to the new rules. A cursory review of the prior rules of service, including Pa.R.C.P. 2131, 2157, and 2180, and the new rules of service, specifically Pa.R.C.P. 404, 423, 424, and 430, confirms this supposition.

upon a foreign corporation to be made by hand delivery; we do not believe that this was the intent of the supreme court. Rule 127 of the Pennsylvania Rules of Civil Procedure, entitled "Construction of Rules. Intent of Supreme Court Controls," provides, in pertinent part:

When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretion; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

Pa.R.C.P. 127(c), 42 Pa.C.S. (1987). Applying this rule of construction to the instant matter, we conclude that the drafters intended rule 424 to simply delineate those individuals who may be served by hand delivery on behalf of a corporation *should that manner of delivery be chosen by the plaintiff.*[5]

**5.** Prior to the enactment of the new consolidated chapter on service of process, the rules of service applicable to "partnerships," "unincorporated associations," and "corporations and similar entities" were located in three separate chapters of the Rules of Civil Procedure. The rule of service applicable to partnerships, Pa.R.C.P. 2131, was located in the chapter entitled "Partnerships as Parties." Section (a) of rule 2131 delineated the individuals who could be served on behalf of a partnership. The remaining sections of the rule, specifically sections (b) through (d), listed the various methods of service which could be utilized to effectuate service. Because rule 2131 was constructed in this manner, the provisions listing the methods of service which could be chosen had to be used in conjunction with the section listing those individuals who could be served on behalf of a partnership. Since service by registered mail was authorized in section (d) as a method of achieving service of process upon a partnership, the drafters presumably intended the registered mail directed to the partnership to be addressed to one of the individuals delineated in section (a).

The rule of service applicable to unincorporated associations, Pa.R. C.P. 2157, was located in the chapter entitled "Unincorporated Associations as Parties." The organization of rule 2157 paralled that of rule 2131. Section (a) of the rule listed those individuals who could be served on behalf of an unincorporated association with the remaining sections of the rule prescribing the methods of service which could be

utilized to effectuate service. Section (d) of the rule, like section (d) of rule 2131, authorized service by registered mail as a form of service upon an unincorporated association. As with rule 2131, the sections of rule 2157 listing the methods of service, including section (d), had to be used in conjunction with the section listing those individuals upon whom service could be made to effectuate service upon an unincorporated association.

The rule of service which applied to corporations and similar entities prior to the enactment of the new consolidated chapter, however, was not organized in the same manner as rules 2131 and 2157. Section (a) of rule 2180 listed those individuals who could be served by *hand delivery* on behalf of corporations located within the county of the party attempting service. Section (b), which governed service by hand delivery upon corporations located in a county other than that of the party attempting service, and subsection (c)(2), which authorized service by hand delivery upon corporations located outside the Commonwealth, referred back to section (a). In this manner, regardless of where the corporation was located, service by *hand delivery* had to be made upon one of those individuals listed in section (a) for the service to be valid. Subsection (c)(2), however, which, in conjunction with Pa.R.C.P. 2079(c)(3), permitted service upon foreign corporations to be made by registered mail, did not refer back to section (a). Consequently, rule 2180 contained no specific instructions as to whom the registered mail had to be addressed to effectuate service upon foreign corporations; the only direction in this regard was contained in rule 2079, subsection (c)(3), which stated that the mail simply had to be sent to the "last known address of the defendant." *See* Pa.R.C.P. 2079(c)(3) (rescinded June 20, 1985, effective January 1, 1986).

We are unable to discern any reason that supports the drafter's decision to delineate those individuals upon whom service by registered mail had to be made to effectuate service upon the entities referred to in rules 2131 and 2157 while not doing the same in rule 2180. Consequently, we believe this inconsistency in the rules of service might have been an oversight by the drafters. This inconsistency, however, appears to have been perpetuated in the new rules on service of process.

Rule 423 of the new rules applies to "partnerships and unincorporated associations." This rule lists those individuals who are authorized to receive service of process upon partnerships and unincorporated associations. The rule does not prescribe the methods of service which can be utilized to achieve service of process upon those entities. For that information, one must refer to the general rules of service in the consolidated chapter. Therefore, as with the previous rules, the provision delineating those individuals who may be served on behalf of a partnership or unincorporated association, namely rule 423, must be used in conjunction with the other rules in the chapter on service which prescribe the methods of service which may be utilized to effectuate service upon those entities. Rule 424, on the other hand, which is entitled "Corporations and Similar Entities," while also delineating those individuals who are authorized to receive service on behalf of corporations and similar entities, appears to restrict the manner of service upon corporations to hand delivery. Therefore, the

If we were to embrace the trial court's interpretation of rule 424, we would have to assume that the supreme court intended service upon foreign corporations to be made only by hand delivery. We simply cannot believe that the court intended such a result. *See* Pa.R.C.P. 128(a), 42 Pa.C.S. (1987) (in promulgating rules, supreme court does not intend a result that is absurd, impossible of execution, or unreasonable). The benefit to be obtained from restricting service on foreign corporations to hand delivery would be substantially outweighed by the burden it would place on the residents of this Commonwealth. While there would be fewer disputes over whether service was achieved, the restriction would impede the ability of our residents to commence actions against corporations which are residents of other states. The cost incurred and the inconvenience involved in achieving service would increase significantly.

Moreover, placing such a narrow restriction on service of foreign corporations would adversely affect the legislature's efforts to facilitate actions by Pennsylvania residents to recover for harm caused to them by foreign corporations. *See Barber v. Pittsburgh Corning Corporation,* 317 Pa.Super. 285, 290, 464 A.2d 323, 326 (1983) ("The so-called 'long-arm' jurisdictional statutes were amended by our legislature in 1972, and such amendments were clearly intended to liberalize a somewhat restrictive Pennsylvania juris-

---

rule appears to delineate those individuals who may accept service on behalf of the corporation only when the method used to achieve service is *hand delivery.* Once again, we see no rationale supporting this difference between rule 423 and rule 424.

We do not, however, have the authority to remedy this inconsistency in the rules. Our task is simply to interpret the rules in the manner in which they presently exist. In our interpretation of the rules, we are bound to follow the rules of construction. Because Pa.R.C.P. 2180 failed to list the individuals to whom registered mail could be sent on behalf of a foreign corporation when registered mail was chosen as the method of service, we cannot interpret Pa.R.C.P. 424 as authoritatively setting forth a list of individuals, one of whom must be served on behalf of a corporation, no matter what manner of service is chosen. *See* Pa.R.C.P. 127(c), 42 Pa.C.S. (1987) ("[T]he intention of the Supreme Court may be ascertained by considering, among other matters ... (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; ... (7) the contemporaneous history of the rule....").

dictional view which existed prior to that time."); *Gulentz v. Fosdick*, 320 Pa.Super. 38, 43, 466 A.2d 1049, 1052 (1983) ("Pennsylvania has long evidenced an interest in extending in personam jurisdiction over foreign corporations doing business within its boundaries, for acts occurring outside the state."); *Kieser v. Lit Brothers*, 275 Pa.Super. 508, 511, 419 A.2d 16, 17 (1980) (legislative intent of the long arm statute was to give Pennsylvania jurisdiction over those foreign corporations whose products cause damage or injury in Pennsylvania). In addition, the restriction would conflict with section 5323 of the Uniform Interstate and International Procedure Act, 42 Pa.C.S. § 5321–5329, which states that "[w]hen the law of this Commonwealth authorizes service of process outside this Commonwealth, the service, when reasonably calculated to give actual notice, may be made: ... by any form of mail addressed to the person to be served and requiring a signed receipt." 42 Pa.C.S. § 5323(a)(3) (1981). Because section 5323 was not rescinded when the supreme court promulgated the new consolidated chapter on service, both rule 424 and section 5323 must be given effect, if possible. This can be achieved if we conclude that rule 424 was not intended to limit service of process on foreign corporations to hand delivery.

A comparison of the rules of service in the new consolidated chapter with former rule 2180 also supports the interpretation of rule 424 espoused by the Reicherts. Rule 2180 was one of the former rules governing service on corporations which were located in the chapter in the Rules of Civil Procedure entitled "Corporations and Similar Entities as Parties." *See* Pa.R.C.P. 2176 et seq. The rules on service in this chapter covered all aspects of service on a corporation. When the rules were consolidated, the drafters, it appears, found that a number of the sections and subsections of the rules specifically dealing with service on corporations could be subsumed under general rules of service. Finding that this discovery rang true with various types of actions and parties, the drafters created a set of general rules of service which would apply to actions across

the board, except where a special rule was needed. By reducing the number of repetitive rules of service, the drafters were able to reduce the total number of rules of service. The Explanatory Comment preceding rule 400 supports this theory. Outlining the portion of the new chapter devoted to service of original process, the comment provides:

> Part I governing service of original process is further divided into four subparts. Subpart A (Rules 400–405), which is entitled "Service Generally", provides the basic practice for serving original process upon any type of party in any type of action and for making the return of service, except for the special situations provided for in Subparts B and C.... Subpart D (Rule 430) provides for the filing of a motion for a special order of court if service cannot be made as provided for in Subparts A, B, or C.

Explanatory Comment, preceding Pa.R.C.P. 400, 42 Pa.C.S. (1987).

All but one of the aspects of service of process upon corporations, namely service by hand delivery, is now governed by a general rule of service. Service by hand delivery cannot be covered under a general rule because it raises a question which does not exist when other types of parties are being served, namely, if I hand "employee X" of "Y corporation" my complaint, will I have achieved service upon the corporation? Rule 424 answers this question.

 Rule 424, then, covers one situation regarding service which necessitates a special rule peculiar to corporations. The other aspects of service upon corporations are governed by the general rules of service. Rule 424 must be used in conjunction with these general rules. Applying this view of rule 424, we find that the substance of almost every section and subsection of rule 2180 was carried over by one of the rules in the 400 series when the rules of service were

consolidated. The following chart summarizes this interpretation of the interrelationship between the sections and subsections of rule 2180 and the rules in the 400 series:

| SUBSECTION OF RULE 2180 | NEW RULE |
|---|---|
| (a), (c)(1)....replaced by | 424 |
| (b) .........replaced by | 400(d) |
| (c)(2) .......replaced by | 404(2), (3), (5) |
| (d) .........replaced by | 430 |

Under this interpretation, service by registered mail continues to be a viable method of service upon corporations pursuant to rule 404(2).

Two sections of the Explanatory Comment strongly support viewing the new rules of service in this manner. One of these sections, which offers an explanation of rule 430, contains the following statement:

> *Rule 430 consolidates provisions for service by special order presently found in* actions involving real property, family law and equity, and *rules relating to corporations* and similar entities and defendants who conceal their whereabouts or otherwise obstruct service of process.

Explanatory Comment, preceding Pa.R.C.P. 400, 42 Pa.C.S. (1987) (emphasis added). This statement unequivocally establishes the intent of the drafters to replace subsection (d) of rule 2180 with rule 430, and thus, dismisses any notion that rule 424 was intended to replace *all* the provisions of rule 2180.[6]

**6.** This portion of Explanatory Comment also demonstrates that the Disposition of Rescinded Rules table was included in the section introducing the new rules of service only as a convenience for the bench and the bar, *see* Explanatory Comment, preceding Pa.R.C.P. 400, 42 Pa.C.S. (1987); the table was not intended to authoritatively represent all changes in the rules. Although the Explanatory Comment clearly indicates that section (d) of rule 2180 was replaced by rule 430, the Disposition of Rescinded Rules table does not contain reference to this change. *See, supra,* note 4.

434

The other segment of the Explanatory Comment which bolsters our interpretation of the rules of service concerns service by mail. This section states:

> When these amendments were published as Recommendation No. 69, the recommendation proposed to extend the right of service by competent adult and by mail to all actions whether within or outside the Commonwealth. These proposals, however, have not been adopted and are not a part of the present amendments, and *the right of service* by competent adult and *by mail is restricted to those situations where it was previously permitted.*

Explanatory Comment, preceding Pa.R.C.P. 400, 42 Pa.C.S. (1987) (emphasis added). This excerpt from the Comment reveals that while there was an effort to broaden the situations where service by mail was allowed, the effort failed. Accordingly, service by mail *continued only in those situations where it was allowed before the enactment of the new rules.* Because service by mail on foreign corporations was allowed pursuant to rule 2180 prior to the promulgation of rule 424, we conclude that the drafters intended for it to continue as a form of service upon corporations.

Admittedly, one paragraph of the Explanatory Comment lends support to the trial court's conclusion that rule 424 limits the manner in which service can be effectuated upon corporations, both domestic and foreign, to hand delivery. This paragraph provides:

> Subpart C (Rule 420–425) consolidates all of the rules governing service upon special parties such as minors or incompetents. Service upon these parties will be made in the manner provided by Rules 400 et seq. unless the rule relating to a particular type of party specifies otherwise. In most instances, these rules merely specify the person who is served.

*See* Explanatory Comment, preceding Pa.R.C.P. 400, 42 Pa.C.S. (1987). Given that rule 424 states that service "shall be made by handing a copy ...," this paragraph appears to suggest that rule 424 was intended to require

service on corporations, in all instances, to be made by hand delivery. This section of the Explanatory Comment, however, must be compared to the evidence supporting the narrow view of rule 424: that it was not intended to limit the manner of service on foreign corporations to hand delivery. We find the evidence supporting the narrow view of the rule more compelling. We hold, therefore, that rule 424 did not abolish the option of serving foreign corporations by mail; rule 424 simply specifies those individuals who may be served on behalf of a corporation when service of process is chosen to be made by hand delivery.

Applying this holding to the facts of the instant case, we conclude that the trial court's order to strike the judgment against Adamas must be reversed and the matter be remanded to the trial court. The trial court's decision to strike the judgment which had been entered against Adamas was based wholly on its determination that rule 424 restricted service upon corporations to hand delivery. The court's order to strike the judgment against Adamas was, therefore, an error of law.

On remand, the trial court will have to rule on Adamas's motion to open the judgment.[7] The trial court should note that while the evidence submitted by Adamas to show that the individual who signed for the Reicherts' complaint was not one of its employees could not be considered in determining whether the judgment should be stricken, it can be considered in determining whether the judgment should be opened.

In regard to the trial court's decision concerning Falcon, the court offered two reasons for its order to strike the judgment: (1) service cannot be made upon a foreign corporation by certified mail; and, (2) Falcon was not served with

7. As we stated previously, Adamas's petition to open the judgment was rendered moot when the trial court entered its order granting Adamas's petition to strike the judgment. *See, supra,* note 2. Given our reversal of the trial court's order, however, Adamas's petition to open is no longer moot. It must, therefore, be addressed.

the Reicherts' amended complaint. If one of these reasons supports the trial court's decision to strike the judgment against Falcon, then the order must be affirmed. Having made it clear that service can be made on a foreign corporation by certified mail, we turn our attention to the second reason given by the court in support of its order.

The trial court concluded that the Reicherts' failure to serve its amended complaint upon Falcon was a fatal defect on the record adequate to permit the court to strike the default judgment.[8] The trial court reasoned that when an original complaint is amended, the amended pleading becomes the operative pleading in the case and that Pa.R.C.P. 440 "mandates that each party filing or serving any legal papers in an action, other than original process, to serve copies thereof to every other party to the action." In so reasoning, however, the trial court, misapplied the rules of civil procedure.

8. As support for this holding, the trial court cited to *Clymire v. McKivitz,* 350 Pa.Super. 472, 504 A.2d 937 (1986). *Clymire,* however, does not lend credence to the trial court's conclusion. In *Clymire,* the trial court entered an order striking the default judgment which had been entered against the appellee, McKivitz, on the ground that he had not been served with the writ of summons. On appeal, we affirmed the trial court's order. In doing so, we reasoned that even assuming McKwitz was properly served with the writ of summons, service of that document did not excuse the need to serve the complaint upon him after it had been filed. We stated:

> A writ of summons is "only a simple notice to the defendant that the plaintiff has instituted suit against him and that the defendant is 'required to defend or a default judgment may be entered against' him. [It] does not create a judgment by default for want of an appearance. The default judgment may be entered ... only as authorized by Rule 1037.... Indeed, [the service of a writ of summons] imposes no duty whatever upon the defendant until the plaintiff files and serves his complaint, to which the defendant will be required to plead, if it is properly endorsed." 1 Goodrich–Amram 2d § 1007:4. The record in this case does not disclose that the complaint was ever served upon David McKivitz. This is a fatal defect.

*Id.,* 350 Pa.Superior Ct. at 476, 504 A.2d at 939 (footnote omitted). *Clymire* is distinguishable from the instant case because Falcon *was served* with the original complaint. Having received the original complaint, Falcon had a duty to answer it or suffer a default judgment. Rule 1037 of the Rules of Civil Procedure specifically lists the failure to answer a complaint as a basis for a default judgment.

The Reicherts' original complaint was served upon Falcon on October 6, 1986. The complaint contained a notice to defend. Pursuant to Pa.R.C.P. 1026, Falcon had twenty days from October 6 to file an answer to the complaint. When the Reicherts sent Falcon the notice of default for failure to file an answer to their complaint on March 9, 1987, they did so based on Falcon's failure to answer their original complaint. After waiting for ten days for Falcon to respond to the notice as Pa.R.C.P. 237.1 requires,[9] the Reicherts filed a praecipe to enter judgment against Falcon and the prothonotary entered a default judgment against Falcon.

Rule 1037 of the Rules of Civil Procedure provides, in pertinent part:

(b) The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time an answer to a complaint which contains a notice to defend or for any relief admitted to be due by the defendant's pleadings.

Pa.R.C.P. 1037(b), 42 Pa.C.S. (1987). This rule specifically states that a default judgment may be entered against a defendant for its failure to file an answer to a complaint which contains a notice to defend. Falcon failed to file an answer to the Reichert's original complaint. Thus, rule 1037 was properly used by the Reicherts to obtain a default judgment against Falcon.

The fact that the Reicherts filed their amended complaint between the time they sent Falcon the notice of default and the time the default judgment was entered does not change our analysis of this situation. The Reicherts were required to amend their complaint as a result of the preliminary

---

9. Rule 237.1 states, in pertinent part:
 (a) No judgment by default shall be entered by the prothonotary unless the praecipe for entry includes a certificate that a written notice of intention to file the praecipe was mailed or delivered to the party against whom judgment is to be entered and to his attorney of record, if any, after the default occurred an at least ten days prior to the date of the filing of the praecipe.
 Pa.R.C.P. 237.1, 42 Pa.C.S. (1987).

objections of one of the other defendants in the suit, Wolverine Cutter Company, *not because of any action taken by Falcon.* Moreover, the trial court gave the Reicherts seventy-five days from February 3, 1987, the date of its order, to file their amended complaint. Seventy-five days from February 3, 1987 was April 19, 1987. The Reicherts, therefore, filed their amended complaint an entire month before the deadline given by the trial court for them to do so. Consequently, if we were to strike the default judgment against Falcon because Falcon was not served with the Reicherts' amended complaint, Falcon would benefit and the Reicherts would suffer as a result of the Reicherts' diligence in complying with the trial court's order. This would make little sense.

In addition, the Reicherts clearly intended the praecipe for entry of default judgment which they filed with the prothonotary to apply to their original complaint, not to their amended complaint. Indeed, they sent Falcon the notice of default for failure to answer their complaint before they even filed their amended complaint.

We conclude, therefore, that the trial court also erred in basing its order striking the judgment which had been entered against Falcon on the Reicherts' failure to serve Falcon with their amended complaint. As such, we reverse that order and remand the matter to the trial court. Because Falcon filed a motion to strike and/or open the judgment entered against it, the trial court must determine whether there are grounds to open the judgment.[10]

Based on the foregoing discussion, we reverse the orders of the trial court striking the judgments which had been entered against Adamas and Falcon, and remand these matters to the trial court for further consideration.

Reversed and remanded. Jurisdiction relinquished.

**10.** In view of our determination that the trial court erred in granting Falcon's petition to strike the default judgment entered against it, Falcon's petition to open the default judgment is no longer moot. Therefore, as with Adamas's petition to open, it must be addressed.